Filed 12/1/15  Marriage of Lewis CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re Marriage of STEVE and DONNA LEWIS. | B255900 (c/w B258688) |
| STEVE LEWIS, <br><br> Appellant, <br><br> v. <br><br> DONNA LEWIS, <br><br> Respondent. | (Los Angeles County Super. Ct. No. BD520825) <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br><br> **[NO CHANGE IN JUDGMENT]** |

THE COURT:[*]


It is ordered that the opinion filed herein on November 3, 2015, be modified as follows:

On page 3, the first sentence of the first full paragraph, after the words "addressing an appeal," and before "we begin," footnote 2 is deleted and replaced with the following footnote:

> [2]  Notwithstanding well-established rules of appellate procedure, counsel offered inadequate arguments.  We discuss these shortcomings in subheadings 1 through 4, *infra*.

---

[*]  BOREN, P. J., ASHMANN-GERST, J., CHAVEZ, J.

On page 4, the first sentence of the first full paragraph, beginning with "Moreover, and perhaps more importantly, attacks on the character," is deleted and replaced with the following:

> Moreover, attacks on the character of opposing counsel are not well-received in this court, and pejorative adjectives, including those directed towards the parties and the trial court, do not persuade.[3]

> [3] In the petition for rehearing, counsel contends that the briefs contained "no attacks on the character of opposing counsel." The briefs were written by attorneys. If an attack on a party, a witness, or the trial court arises in a brief, then we should construe that as an attack by and against opposing counsel. "'An attorney should not disparage the intelligence, integrity, ethics, morals or behavior of the court or other counsel, parties or participants when those characteristics are not at issue.'" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1536–1537.) For clarity, we note some of the "unbecoming" (Cal. Atty. Guidelines of Civility & Professionalism (July 20, 2007), Introduction, p. 4) comments made in the appellate briefs. The opening brief accuses the trial court of committing a "whopping" miscarriage of justice, of paying "lip service" to a legally recognized distinction, and of having "plucked [numbers] out of thin air." Counsel also writes: "The trial court has no discretion to use overblown financial figures to determine spousal support. As with all computer programming, garbage in, garbage out." The opening brief likewise asserts that Donna's expert "plucked" a number from the air and that her charge to Steve's side of the ledger was "befuddling". The respondent's brief also contains improper remarks. It repeatedly uses the word "mantra," as if Steve had a "mantra" to avoid paying Donna. It inappropriately asserts that "Steve does not believe that the rules apply to him" and that he "is one of those people" "who takes his anger and greed beyond the bounds of reason." The reply brief responds in kind, by accusing the respondent's brief of "[t]aking the low road," of characterizing Donna's argument as a "a vain effort to make up for the deficiencies in her proof," of describing an expert's testimony as "gibberish," and of reiterating its insult that the trial court only paid "lip service" to the statutory factors.

On page 4, the last sentence of the second full paragraph, beginning "Impugning the character" and ending with "these ad hominem attacks" is deleted.

On page 5, the first sentence of the first full paragraph, footnote 4 is added between the words "In his reply brief," and "Steve asserts," which will require renumbering of all subsequent footnotes:

[4] The petition for rehearing contends that we unjustly criticized counsel "for initially submitting a reply brief that contained a smaller type font than called for in the rules and for signing a declaration that the brief complied with the rules." While admitting that the reply brief "may have been a bit harder to read," counsel then complains that we never asked for an explanation, and, had we done so, we would have understood this "innocent" mistake. This error had no bearing on the resolution of the issues in the appeal. We requested and received a proper reply brief that we fully considered. (Cal. Rules of Court, rule 8.204(b)(4) ["[T]he type size, including footnotes, must not be smaller than 13-point"].)

There is no change in the judgment.

Appellant's petition for rehearing is denied.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of STEVE and DONNA LEWIS.<br><br>STEVE LEWIS,<br><br>　　　　Appellant,<br><br>　　v.<br><br>DONNA LEWIS,<br><br>　　　　Respondent. | B255900<br>(c/w B258688)<br><br>(Los Angeles County<br>Super. Ct. No. BD520825) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County. Mark A. Juhas, Judge.  Affirmed.

　　　　Greines, Martin, Stein & Richland and Marc J. Poster for Appellant.

　　　　Trope & DeCarolis, Patrick DeCarolis, Jr., and Melissa R. Fresquez for Respondent.

_____

This appeal arises from a July 11, 2014, judgment settling the marital estate of Steve (Steve) and Donna Lewis (Donna).[1]  Four issues lie at the heart of Steve's appeal: (1) Whether the trial court erred in characterizing as community property $292,517 from an account that Steve established after the date of separation; (2) Whether the trial court erred in charging Steve for $254,000 transferred to the Anglo Irish Bank; (3) Whether the trial court erroneously attributed $49,776 in Steve's personal corporation's account to community property; and (4) Whether the trial court "abused its discretion in awarding more than $25,000 per month permanent support to start."

Quite simply, Steve did not meet his burden on appeal.  We affirm.

### FACTUAL BACKGROUND

Steve and Donna married on May 29, 1994, and had two children, one born in 1996 and one born in 1999.

Steve is a partner in Vertical Systems, a wholesale manufacturers' representative for commercial heating, ventilating, and air conditioning equipment.  He is also part owner of two related entities.  Before having children, Donna worked as a senior accountant for a major accounting firm; since the birth of her children, she was primarily a stay-at-home mother.

The family enjoyed an affluent lifestyle, which included an ocean-view home in Malibu and a vacation home in Mammoth.

Steve filed a petition to dissolve the marriage in March 2010.  The trial court found that the parties separated on September 30, 2010.

Judgment on reserved issues was filed July 11, 2014.  On appeal, Steve challenges certain monetary adjustments, discussed below.

---

[1]     For convenience, we refer to the parties by their first names.  (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.)

## DISCUSSION

In addressing an appeal,[2] we begin with the presumption that a judgment or order of the trial court is presumed correct, and reversible error must be affirmatively shown by an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them. (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

The appellant has the burden of overcoming the presumption of correctness. He or she must "present argument and authority on each point made" (*County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 591; Cal. Rules of Court, rule 8.204(a)(1)(B)) and cite to the record to direct the reviewing court to the pertinent evidence or other matters in the record that demonstrate reversible error. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) It is not our responsibility to comb the appellate record for facts or to conduct legal research in search of authority to support contentions on appeal (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768), and an appellant's "[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]. [Citation.]" (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) If the appellant fails to cite to the record or relevant authority, we may treat the issue as waived. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 165.)

---

[2]    Given the reputations of the law firms and lawyers representing the parties in this appeal, we are, to use a word in Steve's opening brief, "befuddle[ed]" by the quality of the legal work presented. Notwithstanding a certificate of compliance verifying the font size, Steve's reply brief was sent back to counsel because it was too small to be read. And, notwithstanding well-established rules of appellate procedure, counsel offered incomplete, unfounded, and unintelligible arguments.

Moreover, and perhaps more importantly, attacks on the character of opposing counsel are not well received in this court, and pejorative adjectives do not persuade. We are compelled to echo the view of our colleagues in the Fourth Appellate District, who recently lamented that "[o]ur profession is rife with cynicism, awash in incivility." (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 293.)

"[I]t is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law." (*People v. Chong* (1999) 76 Cal.App.4th 232, 243.) Attorneys "have an obligation to be professional with . . . other parties and counsel . . . . This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution." (Cal. Atty. Guidelines of Civility & Professionalism (July 20, 2007), Introduction, p. 3.) "Indeed, unwarranted personal attacks on the character or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct." (*In re S.C.* (2006) 138 Cal.App.4th 396, 412.) Impugning the character of opposing counsel is almost never appropriate and in this case was particularly embarrassing. We will not address these ad hominem attacks.

1. Steve's Withdrawal of $292,517 from Wells Fargo Account 7308

In October 2010, Steve opened Wells Fargo account 7308. Based upon the evidence cited in the parties' appellate briefs, we are unable to determine the initial amount of monies that started in that account. Moreover, at trial, Steve was unable to identify the source of funds used to open the account, and his expert, William Mowrey, also did not have any records to explain the monies in the account, thereby making it impossible for us to determine the source of the initial deposit. In other words, we cannot determine whether the account was opened with community or separate property funds.

Relying on the evidence presented, including the testimony from Donna's expert Terry M. Hargrave (Hargrave), the trial court concluded that the monies in the Wells Fargo account must be community property. On appeal, Steve has the burden of

4

establishing that the trial court's finding was erroneous. By not addressing key, underlying points, Steve failed to meet his burden on appeal.

In his reply brief, Steve asserts: "[T]here was *no* evidence of a deposit of $297,517 one month after separation, much less proof that the source of the deposit was community property. The *only* testimony in this regard was that Steve deposited $18,000 around that time, which is what he typically deposited from his $20,000 monthly draw." But the evidence to which Steve directs us is to a check dated March 2011 (months after the account was opened) and his testimony about his typical deposit from a paycheck. He does not identify any evidence as to the source or amount of monies deposited to open this Wells Fargo account.

2. $254,000 Charge to Steve's Side of the Community Property Ledger

Steve argues that the trial court erred in finding that $254,000 of monies that were transferred into and out of certain bank accounts was community property that should be charged to Steve's side of the ledger. At the risk of sounding terse, Steve's argument absolutely makes no sense. While he accuses Donna's expert of not "connecting the dots," his appellate briefs suffer the same flaw. We cannot follow his argument at all.

How much money started in the subject bank account? What is the source of that money? How much money was transferred into and/or out of that bank account? What was the source of that money? Too many bank accounts are mentioned without answers to these foundational questions.

3. $49,776 in Hey Tor Services, Inc., (Hey Tor) Account

Steve challenges the trial court's finding that $49,776 in a bank account in the name of Hey Tor[3] is community property. He makes two short arguments: First, he contends that these monies were already accounted for in another line item on Hargrave's

---

[3]     "It is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11.) With that in mind, we note that Donna describes Hey Tor Services as a "loan out corporation which essentially did no business but received Steve's draws from Vertical Systems."

spread sheet that represented Hey Tor funds. But, he offers no evidence or argument in support of his conclusion. How do we know that the $176,312 (identified as Hey Tor funds withdrawn by Steve) on Hargrave's spread sheet included the $49,776?

Second, Steve contends that the $49,776 consists entirely of his separate property. In support, his only "evidence" is that this Hey Tor account was opened after the date of separation. But, he once again fails to explain the source of those monies. And, the source of those monies appears to be community property. After all, there is evidence that this Hey Tor account arose out of two predecessor accounts that contained community property. Also, Steve testified that he sold a community property automobile and deposited the funds into a bank account in the name of Hey Tor, further commingling the monies in the account. These facts support the trial court's finding that the $49,776 constituted community property. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823.)

4. "Permanent Support to Start"

Finally, according to the heading in his appellate brief, Steve argues that the "trial court abused its discretion in awarding more than $25,000 per month permanent support to start." Steve goes on to summarize what the trial court ordered and argue error. But, he neglects to set forth what the trial court's error was. Was the error just the June 2012 support order or was it the support order issued in 2013 and/or the order in 2015? And, what is objectionable—the spousal support? The child support? Both? We are never told.

While Steve takes issue with what the trial court said and did not say in its statement of decision, the trial court had discretion to set the amount of support and we can only reverse the trial court's order if Steve demonstrates an abuse of that discretion. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.)

6

**DISPOSITION**

The judgment is affirmed. Donna is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ


7